UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| REBECCA C. ABEYTA,            )<br>                                               )<br>     Plaintiff                             )<br>                                               )<br>v.                                          )<br>                                               )   **Docket No. 2:15-cv-**<br>TROOPER THOMAS N. BUREAU, II, and )<br>UNKNOWN SUPERVISOR, and COL. ROBERT )<br>A. WILLIAMS, CHIEF OF MAINE STATE )<br>POLICE                                 )<br>                                               )<br>     Defendants                         )  | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES the Plaintiff in the above-entitled matter and states as follows:

### Nature of Action

This is a 4th Amendment violation case arising out of an incident on May 16, 2015 in which Maine State Trooper Thomas N. Bureau, II was dispatched to the home of Rebecca C. Abeyta in response to a noise complaint, admonished her to keep the stereo noise down, and then repeatedly demanded that she provide her identification to him, finally kicking the door to her home in to extract her and arrest her when she refused to provide her identification.

### Parties

1. Plaintiff Rebecca C. Abeyta ("Abeyta") is a resident of Brooks, Maine.

2. Defendant Unknown Supervisor is a Maine State Police Officer who has supervisory control over Defendant Thomas N. Bureau, II.

3. Defendant Col. Robert A. Williams ("Williams") was the acting Chief of the Maine State Police, during all relevant times.

1

4. Defendant Trooper Bureau ("Bureau") was, at all times pertinent to this complaint, a resident of the State of Maine and a Maine State Trooper employed by the State of Maine.

## Subject Matter Jurisdiction

5. This action arises under the United States Constitution, particularly under the provisions of the Fourth and Fourteenth Amendments to the Constitution of the United States, and under Federal Law, particularly the Civil Rights Act, 42 U.S.C. § 1983.

6. This Court has jurisdiction of this cause under and by virtue of 28 U.S.C. § 1343 and 28 U.S.C. § 1331.

7. This Honorable Court may exercise pendent jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367.

## Personal Jurisdiction

8. This Honorable Court wields jurisdiction over each of the Defendants named herein pursuant to 14 M.R.S.A. §704-A in that each of the Defendants is domiciled in the State of Maine.

## Venue

9. Venue is properly laid before this Honorable Court pursuant to 28 U.S.C. § 1391 and Rule 9(a) of the rules of the United States District Court for the District of Maine in that all of the acts complained of occurred in the Northern half of the State of Maine.

## Common Nucleus of Operative Fact[1]

10. On May 16, 2015, Defendant Bureau was dispatched to Plaintiff's home in Brooks, Maine for a loud noise complaint.

---

[1]. These averments are taken, almost verbatim, from the Maine State Police Continuation Report authored by Defendant Bureau.

11. Defendant Bureau arrived on scene at approximately 12:55 am.

12. As he was approaching Plaintiff's home, Defendant Bureau rolled his window down and could hear loud music coming from the home, and he noticed some lights were on.

13. Defendant Bureau knocked on the front door, but received no immediate response.

14. Defendant Bureau then walked alongside the home and shined his flashlight in a window on the left side of the home.

15. Defendant Bureau heard movement inside the room, and identified himself as a State Trooper.

16. Defendant Bureau saw a female head stick up from the bed.

17. Defendant Bureau then asked the female to turn down the music and answer the front door, and he heard a female's voice respond, "okay."

18. Defendant Bureau returned to the front door and waited at the bottom of the steps, about 8 -10 feet away from the front door.

19. Defendant Bureau noticed that the music was turned down and someone was approaching the front door.

20. A female, Plaintiff Rebecca Abeyta, stuck her head out of the door and asked if I could help her.

21. Defendant Bureau informed Ms. Abeyta that she needed to keep the music down because it was too loud.

22. Defendant Bureau then asked Ms. Abeyta to step out of her house.

23. Ms. Abeyta stated that she was not going to come out of her house.

24. Defendant Bureau then asked Ms. Abeyta for her name and date of birth "for my report because she was getting a disorderly warning for the loud music."

25. Ms. Abeyta informed Defendant Bureau that she was under no obligation to give him her name.

26. Defendant Bureau responded, "I told her all I needed was her name and date of birth for my report."

27. Ms. Abeyta again refused to provide her identification, this time using profanity.

28. Again, Defendant Bureau demanded Ms. Abeyta's identification.

29. Again, Ms. Abeyta refused to provide her identification.

30. Now, having heard Ms. Abeyta refuse to come out of her house in response to Defendant Trooper's demand, and having refused three times to provide her identification, despite Defendant Trooper's repeated demands, Defendant Trooper approached the front door and for at least the fourth time, said "that she needed to give me her name and date of birth."

31. Ms. Abeyta repeated that she was under no obligation to give Defendant Bureau anything.

32. Defendant Bureau felt that Ms. Abeyta's vocal, profanity-laced refusals to provide her identification comprised disorderly conduct, "therefore, she needed to provide her name and date of birth upon my request."

33. While Defendant Bureau was talking to Ms. Abeyta through the doorway, Ms. Abeyta started to close the front door to go back inside.

34. Defendant Bureau attempted to hold the door open and demanded, yet again, that Ms. Abeyta provide her name and date of birth.

35. Ms. Abeyta started yelling and saying that Defendant Bureau needed a warrant to come into the house.

36. Defendant Bureau informed Ms. Abeyta that "I did not need a warrant."

37. Defendant Bureau once again demanded that Ms. Abeyta provide her name and date of birth.

38. Defendant Bureau told Ms. Abeyta that "if she gave me her name and date of birth that she could go on her way and go back to bed."

39. Defendant Bureau told Ms. Abeyta that "if she did not provide it [name and date of birth] then I would take her to jail."

40. Ms. Abeyta again told Defendant Bureau that "[he] needed a warrant" and she pushed her front door closed while Defendant Bureau was trying to hold it open.

41. Defendant Bureau "immediately kicked the door to open it in fresh pursuit to arrest [Ms. Abeyta] for disorderly conduct and for refusing to give name and date of birth."

42. Ms. Abeyta was leaning against the front door to her home, trying to keep Defendant Bureau from entering the home without her consent.

43. Defendant Bureau then "kicked the door a total of 3 times, the door opened and [he] grabbed [Ms. Abeyta] by her arm and told her she was under arrest."

44. Ms. Abeyta resisted Defendant Trooper's attempts to grab her and pull her out of her home, but Defendant Bureau was "able to pull [Ms. Abeyta] out [of her home] onto the porch."

45. After kicking the door open, and pulling Ms. Abeyta out of her home and onto her porch despite her resistance, Defendant Bureau then engaged in a physical struggle with Ms. Abeyta in which she fell backwards onto the porch, got up on her hands and knees, and then she rolled down the front steps of the house after Defendant Bureau pulled her right arm out from under her.

46. Defendant Trooper Bureau was finally able to overpower Ms. Abeyta and place her in the front, passenger seat of his cruiser, and then call for assistance.

47. Defendant Bureau then pulled Ms. Abeyta out of his cruiser and engaged in another physical struggle with her in which he placed her on the ground and put his left knee on her back, on two separate occasions, while waiting for back up to arrive.

48. When back up arrived, Ms. Abeyta was placed in the back of another officer's cruiser.

49. Defendant Bureau informed the backup officers that "she may need to see a medic to check her for injuries."

50. Following Ms. Abeyta's examination and treatment in Waldo County General Hospital, Defendant Bureau learned that she had sustained a sprained shoulder and a foot injury with glass shards in her foot.

51. Ms. Abeyta was charged by Defendant Bureau with Assault, Refusing to Submit to Arrest, Criminal Mischief, and Disorderly Conduct.

52. All but the Disorderly conduct charges were dismissed.

53. Ms. Abeyta has properly and timely filed a Notice of Claim by certified mail, as required by the Maine Tort Claims Act.

### Count I: 42 U.S.C. §1983 Violation v. Defendant Bureau

54. Plaintiff repeats and realleges the allegations contained in the previous paragraphs.

55. As indicated above, Defendant Bureau, under color of state law, subjected Ms. Abeyta to a deprivation of her constitutional rights, specifically her clearly established rights (1) to be secure in her home against unreasonable searches and seizures, (2) to bodily integrity, (3) to be free of the use of unreasonable force, (4) to substantive and procedural due process, and (5) to be free from arrest except upon a finding of probable cause that she

had committed a crime, protected by the United States Constitution and State and Federal Law.

56. Defendants' actions displayed a reckless or callous disregard of, or indifference to, the rights of Ms. Abeyta.

WHEREFORE, Ms. Abeyta requests that this Honorable Court (1) enter judgment for Plaintiff in an amount that fully and completely compensates her for the injuries she has sustained, (2) award Ms. Abeyta punitive damages, attorney's fees and costs pursuant to 42 U.S.C. § 1983, and (3) award such other and further relief as this Honorable Court deems just and proper.

**Count II: 42 U.S.C. §1983 Supervisory Violation v. Defendant Unknown Supervisor**

57. Plaintiff repeats and realleges the allegations contained in the previous paragraphs.

58. Upon information and belief, Defendant Bureau has been involved in numerous situations that have led to complaints being lodged about violations of citizens' Fourth Amendment rights of privacy, excessive use of force and/or inappropriate and/or unlawful or unconstitutional conduct.

59. Upon information and belief, Defendant Bureau has been disciplined or should have been disciplined numerous times for violations of citizens' Fourth Amendment rights of privacy, excessive use of force and/or inappropriate and/or unlawful or unconstitutional conduct.

60. Upon information and belief, Defendant Unknown Supervisor knew or should have known that Defendant Bureau had a reputation for violent and/or inappropriate/unlawful conduct.

61. Upon information and belief, Defendant Unknown Supervisor did not take reasonable steps to supervise or discipline Defendant Bureau or to minimize the risk of harm that Defendant Bureau presented to the public.

62. Upon information and belief, any reasonably well-trained supervisor would have recognized that Defendant Bureau, if not properly disciplined and supervised, would cause harm to the public.

63. Defendant Unknown Supervisor's conduct or inaction in supervising and/or disciplining the Defendant Bureau amounts to either deliberate, reckless or callous indifference to the constitutional rights of others, including Ms. Abeyta.

64. On information and belief, Defendant Unknown Supervisor also failed to promulgate appropriate policies regarding Fourth Amendment principles, excessive force, and regarding when and under what circumstances citizens are required to provide identification.

65. On information and belief, Defendant Unknown Supervisor failed to properly train Officer Bureau and others with regard to the Fourth Amendment, when citizens are required to provide identification and the appropriate use of force.

66. An affirmative link exists between the street level constitutional violations perpetrated by Defendant Bureau and Defendant Unknown Supervisor failure to a) properly supervise and/or discipline Officer Bureau and/or b) promulgate appropriate policies regarding the Fourth Amendment, when citizens are required to provide identification and regarding the appropriate use of force and c) train his officers, including Officer Bureau, on Fourth Amendment, when citizens are required to provide identification and regarding the appropriate use of force.

67. Defendant Unknown Supervisor's actions displayed a reckless or callous disregard of, or indifference to, the rights of Ms. Abeyta.

WHEREFORE, Plaintiff Ms. Abeyta requests that this Honorable Court (1) enter Plaintiff judgment in an amount that fully and completely compensates her for the injuries she has sustained, (2) award Ms. Abeyta punitive damages, attorney's fees and costs, and (3) award such other and further relief as this Honorable Court deems just and proper.

### Count III: 42 U.S.C. §1983 Municipal Violation v. Defendant Col. Robert A. Williams, Chief of Maine State Police

68. Plaintiff repeats and realleges the allegations contained in the previous paragraphs.

69. The customs or policies of the Maine State Police comprise the cause of and the moving force behind the constitutional violations chronicled in this Complaint.

70. At all relevant times, Defendant Williams was acting Chief of Maine State.

71. At all relevant times Defendant Williams was a policymaker within the Maine State Police hierarchy.

72. At all relevant times, on information and belief, Defendant Williams, as a policymaker for the Maine State Police, adopted a custom or policy of abdicating any appropriate level of supervision and/or discipline of Defendant Bureau.

73. At all relevant times, on information and belief, Defendant Williams, as a policymaker for the Maine State Police, adopted a custom or policy of permitting his officers to violate citizens' Fourth Amendment rights and use unreasonable force.

74. This *laissez faire* approach to the use of arrests and force by his officers amounts to an unconstitutional custom or policy.

75. It was or should have been eminently foreseeable to Defendant Williams that allowing his officers to violate citizens' Fourth Amendment rights, arrest without probable cause

and to use force under circumstances which did not require that level of force would inevitably result in the violation of citizens' civil rights, as happened in the instant case.

76. Defendant Williams' actions displayed a reckless or callous disregard of, or indifference to, the rights of Ms. Abeyta.

WHEREFORE, Plaintiff Ms. Abeyta requests that this Honorable Court (1) enter Plaintiff judgment in an amount that fully and completely compensates her for the injuries she has sustained, (2) award Ms. Abeyta attorney's fees and costs, and (3) award such other and further relief as this Honorable Court deems just and proper.

### Count IV: Assault v. Defendant Bureau

77. Plaintiff repeats and realleges the allegations contained in the previous paragraphs.

78. The actions taken by Defendant Bureau on May 16, 2015 comprise an unjustified assault against Ms. Abeyta.

79. The assaultive behavior was taken in bad faith.

80. The assaultive behavior was malicious or impliedly malicious.

WHEREFORE, Plaintiff Ms. Abeyta requests that this Honorable Court (1) enter Plaintiff judgment in an amount that fully and completely compensates her for the injuries she has sustained, (2) award Ms. Abeyta punitive damages, attorney's fees and costs, and (3) award such other and further relief as this Honorable Court deems just and proper.

### Count V: Unlawful Arrest v. Defendant Bureau

81. Plaintiff repeats and realleges the allegations contained in the previous paragraphs.

82. The actions taken by Defendant Bureau on May 16, 2015 comprise an arrest without probable cause.

83. The arrest was made in bad faith.

84. The unlawful arrest was malicious or impliedly malicious.

WHEREFORE, Plaintiff Ms. Abeyta requests that this Honorable Court (1) enter Plaintiff judgment in an amount that fully and completely compensates her for the injuries she has sustained, (2) award Ms. Abeyta punitive damages, attorney's fees and costs, and (3) award such other and further relief as this Honorable Court deems just and proper.

Dated:  10/21/2015                                  /s/ Michael J. Waxman
                                                                                       Attorney for Plaintiff
                                                                                        Rebecca C. Abeyta